### HINSON v. POSTAL TELEGRAPH CABLE CO.

(Filed April 28, 1903.)

1. TELEGRAPHS—*Negligence—Contributory Negligence.*

In an action against a telegraph company for delay in delivering a message, where the court charged that defendant would have discharged its duty "if it tendered the telegram at the mills where plaintiff was employed, and to which the telegram was addressed, to an employee thereof having access to the pay rolls, and who refused to receive the same, telling defendant that plaintiff was not employed there, and defendant then inquired of a boy in the millyard, at the post office, at the city directory, and also sent a service message," it was error to add, "and used the diligence that one of ordinary prudence would have exercised under the circumstances."

2. TELEGRAPHS—*Negligence.*

Where a person in whose care a telegram is addressed refuses to receive the same, the telegraph company must make reasonable effort to deliver it to the sendee.

3. TELEGRAPHS—*Negligence—Contributory Negligence.*

The negligence of a person in whose care a telegram is sent will be imputed to the sendee and not to the telegraph company.

ACTION by M. L. Hinson against the Postal Telegraph Cable Company, heard by Judge *W. R. Allen* and a jury, at January Term, 1903, of the Superior Court of DURHAM County. From a judgment for the plaintiff, the defendant appealed.

*Boone, Bryant & Biggs,* for the plaintiff.
*Winston & Fuller,* for the defendant.

CONNOR, J. On the 19th day of June, 1902, E. W. Hinson, father of the plaintiff, delivered to the defendant's agent at its office in Durham, N. C., for transmission and delivery a message in the following words and figures:

"To M. L. Hinson, Care of Olympia Mills, Columbia, S. C.:
"Come at once. Your mother is dying. Answer.
"B. W. HINSON."

The mother of the plaintiff and wife of the sender was then sick at the home of her husband in the village of East Durham, N. C. The plaintiff alleged that the defendant negligently failed to deliver said message until the 23d day of June, 1902, and that his mother died on the afternoon of the 19th of June, 1902, and was buried on the 20th day of said month about 4 o'clock p. m.; that by reason of the failure to deliver said message the plaintiff did not reach East Durham until the 24th day of June, 1902, at about 6 o'clock a. m., and by reason of defendant's failure to deliver said message he suffered much grief, mental pain and anguish, by reason whereof he was damaged in the sum of $3,000.

The defendant admitted the delivery of the message to its agent at Durham at 11:29 o'clock on June 19, 1902, and payment of the cost for sending the same. It averred that it promptly transmitted the message to its office in Columbia, S. C., a few minutes after its receipt at the Durham office; that immediately after its receipt in Columbia the message was delivered to the messenger boy of the defendant, who promptly carried it to the general office of the Olympia Cotton Mills, Columbia, S. C., and there enquired of the agents in charge of said mill, and particularly of the agent who was acquainted with the pay-roll and the names of all persons working for said mills, for M. L. Hinson, and informed such parties of such telegram and its urgency, but that the agent of said Olympia Cotton Mills informed the said messenger that no such person as M. L. Hinson was then working for said mills and that no such name as Hinson appeared on their June pay-roll, and that said agent of said mill refused to receipt for the message; that within a short time after the said messenger returned from the Olympia Cotton Mills to the office of the defendant in Columbia, a service message was sent by the defendant from Columbia to Durham, asking for a better address and immediately upon the receipt of this

message a 'phone message was sent from the Durham office of the defendant to the Durham Manufacturing Co., at East Durham, and that thereupon and without delay inquiry was made as to M. L. Hinson's address of the sender of said message, and the members of his family who resided in the same house with him, and who were then and there by the defendant informed that the address of M. L. Hinson at the Olympia Cotton Mills was not correct and he could not be found at the Olympia Cotton Mills, and that a better address was wanted and must be given, or the said message could not be delivered; that the sender of the message and the members of his immediate family stated that they did not know of any other address at that time but Olympia Mills; that the residence of said M. L. Hinson on the 19th, 20th and 21st days of June, 1902, was not known to the sender of the message or to any member of his family at East Durham, nor had they or any of them at that time information enabling them to promptly reach said M. L. Hinson by wire or letter, nor was his name and address in the city directory of Columbia; that on the 23d day of June, the father of the plaintiff received information which disclosed the residence address of the plaintiff in Columbia and thereupon sent a second message to his son, the plaintiff in this action, which message was directed to him, giving his residence address, and was carefully, promptly and without delay delivered by the defendant to said M. L. Hinson at his proper address, which was not at the Olympia Mills; that the sender of the message, in not giving a full and accurate address when he delivered the message on the 19th of June, 1902, to the defendant, was guilty of contributory negligence; that Columbia is the capital of South Carolina and is a city of about 28,000 inhabitants and that it is well-nigh impossible to find a person in said city unless his residence address is written, or unless he

be a resident and freeholder in said city, or unless he be well known therein.

The court submitted the usual issues. The plaintiff introduced testimony tending to sustain his allegations in respect to the sending of the message, the failure to deliver, the sickness, death and burial of his mother. He testified in his own behalf as follows: "I worked in Columbia at the Olympia Mills and was there on June 19, 1902. I received mail there, care of Olympia Mills, I received a letter from my sister postmarked June 18, which I answered on June 20. I left the Olympia Mills because they would not let me have my money to come home on. I received both messages on Monday. I got my money from the Olympia Mills as soon as I showed the telegram. My name is on the books of the Olympia Mills. I have seen telegrams delivered to employees. I would have come when I received my sister's letter if I had had the money.

The defendant introduced Theodore Rivers, who had been a messenger boy at its office in Columbia, S. C., who testified that the message was given to him by the manager at the defendant's office to be delivered at the Olympia Mills as soon as it was received and copied and entered on the delivery sheet, which was about 12 o'clock, and he carried it at once to the Olympia Mills and offered to deliver it to the bookkeeper (Hammond) in the office of the mills. He received it, but before signing for it, examined his books and said that Hinson was not working for the company, and gave it back to him and refused to receive it; that he came out of the office and met a boy who said that a Mr. Hinson was living down there, but it was not M. L. Hinson, but to go on the hill and he might find him. The witness inquired for Hinson, but could not find him, and did everything he could to find him; he then went to the telephone and told Mr. White, the manager, that Hinson was not at the mill and the witness

could not find him.  White said 'bring the message back,'
which the witness did.  He then went to the postoffice at
Columbia and inquired for Hinson, and if the postmaster
knew where he could deliver a telegram to him.  They did
not know him.  He then looked in the city directory and
found some Hinsons named in the directory and went to see
them, but they did not know the plaintiff.  He then went
back to the office and put his book down and did not bother
it any more because that was all he could do.

H. B. Hammond testified that he was shipping clerk and
assistant paymaster at the Olympia Mills on June 19, 1902,
and remembered that on that day a messenger boy, Theodore
Rivers, came to the office.  The witness went to the window
to wait on him, and he asked where M. L. Hinson was.  The
witness examined the pay-roll of the company hurriedly and
found that one Luther Hinson had been working there, but
left on the 17th of June, and he refused to receive the mes-
sage, as there was no one there by the name of M. L. Hinson,
and he was not working for the mill.  The pay-roll was made
up the night before and showed the names of all those working
for the company, and the witness did not inquire of any one
else in the office in regard to Hinson.  The population of
Columbia is about 25,000.  There were on the pay-roll of the
company about 700 or 800 operatives.  The operatives gen-
erally lived in the mill village, and he received telegrams
sent to the mill.

G. A. White, Jr., testified that he was manager of the
defendant company at Columbia and remembered receiving
the message, and delivered it to the messenger boy to carry
quickly to the Olympia Mills and deliver it at the company's
office for Hinson.  The boy started at once, and a short while
afterwards the witness received a message over the 'phone that
the Olympia Mills would not receipt for the message because
no such person was working at the mill.  He also stated that

he had made an effort to find Hinson outside of the mill in the mill village, and after numerous inquiries to find him, the witness instructed the boy to bring the message back to the office. The witness had the boy to go to the postoffice and make inquiry there to find out if he received any mail, and if so, where he could deliver a message to him; also instructed the boy to look through the city directory, which he did, and the witness did the same thing, but could not find the name of M. L. Hinson in the directory; found names of two other Hinsons, and had the boy to look them up, hoping to get some information as to M. L. Hinson; the boy was smart and reliable. The witness sent to the Durham office a service message asking for a better address, a copy of which he produced; he did not receive any reply to it; that the second message was delivered to the plaintiff at his address, 521 Main street, Columbia, S. C. This message was dated June 23, 1902. The witness had resided in Columbia four years and had been manager for the defendant about sixteen months; he was not acquainted with the plaintiff; he exhausted every means in his power and did everything he could to deliver the message.

The defendant introduced W. H. Oakey, who testified in regard to the receipt of the service message on June 19, 1902, at Durham; that he sent out to get better address, but was unable to do so, and that the sender knew no better address.

Several requests were made by the defendant for instructions, some of which were given. His Honor charged the jury in respect to the duty of the defendant to deliver the message, to which there was no exception, that the burden of proof was upon the plaintiff to satisfy the jury that the telegram was not delivered within a reasonable time. The charge was full, and to the larger portion thereof there can be no objection. His Honor concluded his instructions to the

jury as follows: "It is not contended that there was delay in tendering to the Olympia Mills, and if you find from the evidence that the defendant tendered the telegram at the Olympia Mills to an employee of the Olympia Mills, employed in the main office, having access to the pay-rolls, and such an employee refused to receive the telegram, telling the agent of the defendant that Hinson was not there and that his name was not on the pay-roll, and you find further that the defendant then inquired of a boy on the mill yard, at the postoffice, at the city directory, and also sent a service message, and used the diligence that one of ordinary prudence would have exercised under the circumstances, then answer the first issue 'No.'" To this charge the defendant excepted.

We think that the exception should be sustained. His Honor should have charged the jury that if they found from the testimony that the defendant tendered the telegram at the Olympia Mills to an employee of the Olympia Mills, employed in the main office, having access to the pay-rolls, and such employee refused to receive the telegram, telling the agent of the defendant that Hinson was not there and his name was not on the pay-roll, and if you find further that the defendant then inquired of a boy on the mill yard, at the postoffice, at the city directory, and also sent a service message, that it had discharged its full duty in the premises; and to further charge the jury "and used the diligence that one of ordinary prudence would have exercised under the circumstances," was error in that it left the jury in doubt as to what measure of diligence the defendant must have used other than that laid down by his Honor, in order to discharge itself of liability.

We have held at the last term of this court in *Lefler v. Telegraph Co.*, 131 N. C., 355, that when a telegram to a person is addressed in care of a corporation, a delivery to

an agent of the corporation is sufficient, and his Honor in accordance therewith charged the jury that a delivery to Hammond would have relieved the defendant of further liability.    It has also been held that, upon the refusal of the agent to receive the message, it was the duty of the defendant to make reasonable effort to find the sendee and to deliver the message.    The agent of the Olympia Mills having been selected by the sender as the person to whom the message was to be delivered for the sendee, he thereby became the agent of the sendee and his negligence in stating to the defendant's messenger boy that the sendee was not at the mill and his refusal to receive the same, must be imputed to the sendee and not to the defendant.    This being so, the defendant was put in the same position that it would have been if no direction had been given as to the place of residence or address of the sendee.    Viewed from this standpoint, the defendant had in its possession a message addressed to M. L. Hinson with no direction as to place of residence other than the city of Columbia, S. C., its duty upon this state of facts, was to use every reasonable effort to find and deliver the message to the sendee, and, upon failure to do so, to ask for a better address.    No controversy is made in respect to the urgency of the message or the duty of the defendant to use all reasonable efforts to deliver it promptly.    We think if the jury had found the facts, in respect to which there was testimony, grouped by his Honor, that such finding would have constituted due diligence, and that his Honor should have told the jury, upon this hypothesis, that the defendant was not guilty of negligence.

This case is distinguished from *Hendricks v. Telegraph Co.,* 126 N. C., 304; 78 Am. St. Rep., 658.    There, the defendant sent no service message asking for a better address, and the court said: "We think that it is the duty of the company in all cases, where it is practicable to do so, to inform

the sender of the message that it can not be delivered. .While its failure to do so may not be negligence *per se,* it is clearly evidence of negligence.    In many instances, by such a course, the damages might be greatly lessened, if not entirely avoided. A better address might be given, mutual friends might be communicated with, or even a letter might reach the addressee.    In any event, the sender might be relieved of great anxiety.    Moreover, it might *tend* to show diligence on the part of the company."    This duty was met and discharged by the defendant in this case.    There is really no conflict in the testimony and we think that but one inference can be drawn from the defendant's testimony, if believed by the jury.    They of course are the sole judges of its credibility, and this was properly submitted.    There was no other testimony in the case from which the jury could have properly inferred that the defendant did not use due diligence, and it is error to submit to a jury a phase of a case in respect to which there is no testimony.

We do not deem it necessary to consider the other interesting questions which were discussed before us by counsel.

The defendant is entitled to a

New Trial.