### W. V. HOWARD v. WESTERN UNION TELEGRAPH COMPANY.

(Filed 22 December, 1915.)

**1. Issues—Contributory Negligence—Evidence—Telegraphs.**

Upon the delivery of a telegram to the agent of a telegraph company, properly addressed as to the sendee and town, the agent asked for a better address, and was told by the sender he could give the street address but not the number of the residence. There was conflicting evidence as to whether the sender said "East McBee Avenue at 111" or "East Avenue, 113." The sendee was a white man well known in the town, and the message was delivered to a negro by the same name, at a widely different number of house. The sender of the message afterwards offered in time to supply the correct and definite address, but the agent at the receiving point told him the message had been delivered: *Held*, it is the duty of a telegraph company to deliver a telegram with reasonable promptness when it is correctly addressed, and under the evidence in this case an issue as to contributory negligence was erroneously submitted to the jury.

**2. Trials—Attorneys—Arguments of Law.**

It is reversible error for the trial judge not to permit attorneys to argue the law to the jury and to apply therein the decisions of the Court (Revisal, sec. 216); though the facts may not be read in evidence.

**3. Judgments—Issues—Contributory Negligence.**

Where in an action to recover of a telegraph company damages for mental anguish the trial court has erroneously submitted an issue as to contributory negligence, which the jury found in the affirmative, but assessed the damages under the third issue, the Supreme Court will not set aside the erroneous issue and give a judgment for the damages assessed, for the finding as to contributory negligence had the effect of reducing the amount of damages in the consideration of the jury.

**4. Appeal and Error—Rules Supreme Court—Printed Records.**

Rule 29, as to the size, style, type, etc., of the transcript on appeal, is for the purpose of preserving them in bound volumes of uniform size, for the use of the Court, and must be complied with. On this appeal the appellant is not permitted to recover the cost of his transcript which is not printed in compliance with the rule.

WALKER, J., concurring; BROWN, J., dissenting.

APPEAL by plaintiff from *Cline, J.*, at March Term, 1915, of SWAIN.

This action is for damages for failure to deliver the following message which was handed by the plaintiff to the defendant's operator at Bryson City, N. C., addressed to his son-in-law, John Edwards, Greenville, S. C.: "Your wife's mother dead. Come. Answer at once." This message was received by defendant's agent at Bryson City, 2 :52 p. m., 24 March, 1913, and was delivered to a negro named John Edwards at 4 :10 the same afternoon.

When the message was handed to the agent the only address on it was "John Edwards, Greenville, South Carolina." The agent asked Howard if he could give him some better address, and Howard stated that he

could give him the street address but not the number of the residence. Howard and other witnesses say that he told the agent "East McBee Avenue at 111," and the agent testifies that Howard told him "East Avenue 113." The telegram was never delivered to the sendee, John Edwards, and neither he nor his wife had opportunity to attend the funeral.

About two hours afterwards Howard went back to the depot and inquired whether the message had been delivered, and asked the agent to ascertain, offering to pay, but the agent told him that he would find out free of charge. Later in the evening Howard again went to the agent, saying that he was afraid something was wrong, and wanted to send another telegram, but the agent told him that he had tried twice to get an answer to his service message, but could not get it. When Howard left Bryson City the agent promised him that if he heard anything before Martin's store was closed at Noland, near which place the plaintiff lived, he would phone Howard; but no message had been received when he arrived at Noland. When Howard reached home he looked up the address of John Edwards and sent his brother next morning to Bryson City to send another telegram. But on his brother reaching Noland, the agent had phoned that the message had been delivered at 4:10 on the evening before. Howard made no further effort to send a message to his daughter and son-in-law, but kept his wife's body until 5 p. m., 26 March, and then buried her.

The jury found that the defendant was guilty of negligence, but that the plaintiff was guilty of contributory negligence, and assessed the damages at $50.

*Frye & Frye for plaintiff.*
*A. S. Barnard and Albert T. Benedict for defendant.*

CLARK, C. J. The plaintiff excepts because the court submitted, over his objection, the following issue: "Did the plaintiff by his own negligence contribute to his injury, as alleged in the answer?"

There was no evidence which should have been submitted to the jury upon the issue of contributory negligence. In *Hocutt v. Tel. Co.,* 147 N. C., 190, where the plaintiff delivered a message to the defendant addressed "Greensboro, N. C.," *Associate Justice Walker,* in speaking of the duty of the plaintiff in such case, uses this language: "Mrs. Hocutt was not bound to do more than she did when she caused a properly addressed message to be delivered to the defendant's operator and tendered the charges for transmission. The duty then devolved upon the defendant to send and deliver the message to the addressee unless it had some legal excuse for not doing so, and none appears in this case." Anything the plaintiff did further than that in this case was in trying to

aid the defendant in the performance of its duty. From the conversation which took place between the agent and the plaintiff, as testified to by DeHart, the agent knew that the plaintiff did not know the full address of Edwards.

The plaintiff was a white man, and yet the telegram was delivered to a negro, and not at 113 East Avenue, much less on East McBee Avenue. The agent at Bryson City prevented the plaintiff sending a second message that same afternoon and also prevented him from sending a message with full street address by his brother the next morning when he phoned to Noland that the message had been delivered at 4:10 p. m. the day before. There was also evidence that John Edwards was at home in Greenville that afternoon; that he had lived in Greenville about two years working on buildings; that his address was filed at the postoffice; that he received his mail every day; that his parents lived in the same house with him; that his father was also well known in the town, and that if he had received the telegram he and his wife would have attended the funeral.

The court erred in refusing to permit the counsel to argue that the ruling in *Cashion v. Tel. Co.,* 123 N. C., 267, applied to this case. Revisal, 216, provides that in jury trials counsel may argue the law as well as the facts to the jury. This is entirely distinct from the instances in which the court has refused to permit counsel to read the facts in one case as evidence in another. There were other errors, which we need not discuss, as they may not occur on another trial.

The defendant insists that we should disregard the error in submitting the issue of contributory negligence and affirm the verdict of $50. But to do so would ignore the fact that the finding on this issue, even if there was no other error, militated to reduce the amount of the damages.

We cannot be inadvertent to the fact, however, that the appellant in printing the transcript did not comply with Rule 29, which requires that the transcript on appeal shall be printed "in the same type and style and pages *of the same size* as the Reports of this Court." This requirement is because all printed briefs and records are bound for preservation in volumes of uniform size, and a failure to observe this rule is inconvenient. By reason of this failure to observe the rule, the appellant will not be allowed to tax the cost of the transcript as a part of his costs in this Court. The Rules of the Court are only such as are necessary, and they must be observed.

For the errors stated there must be a

New trial.

WALKER, J., concurring: There is some confusion in this case, arising from the issues submitted to the jury, but I will assume that the answers

32—170

to the first two issues mean that the telegram was delivered to the operator without any street address, and at his instance and request the party who delivered for transmission gave him the street address as 113 East Avenue instead of 113 East McBee Avenue, as intended by plaintiff, though it is quite certain, if all the evidence is to be believed, that the message as delivered to the operator contained no street address, and that the person who delivered it to him did not *volunteer* any information in regard to it. Even upon this assumption, I think that the defendant was negligent in handling the message, upon its own showing, and if any negligence is imputable to the plaintiff it was not the proximate cause of the injury. The message was received at Greenville and called for a delivery to John Edwards at 113 East Avenue. There was some delay in making any kind of delivery, correct or incorrect, and the senders of the message were inquiring at the other end of the line as to the cause of the delay and wanted to find and give to the operator there the correct address, which was 113 East McBee Avenue, but the operator virtually declined to receive it, even though he may have been partially justified by the neglect of the Greenville operator to wire back for a better address. There was, therefore, negligence at the initial office in not accepting the proffered information, or at the terminal office in not asking for a better address, and it makes little difference at which place it occurred. I incline to the view that there was negligence at both ends of the line, but I will consider for a moment that which occurred at Greenville. The negligence of the messenger there was of course that of the company, as he was its chosen agent to perform the important act of delivery. He had a message addressed to John Edwards at 113 East Avenue, and he could not be found at that address. This would naturally suggest to a man of ordinary intelligence and prudence that there was something wrong with the message, and should have called for some report by him to the office where he received the message and some inquiry by the operator there as to the reason for this evident mistake. If it had been made, the correct address would have been given, as the testimony shows that it was known at the place where the death occurred. But this was not done, no service message being sent to the sending station for further and more certain information.

The messenger had no more right to deliver it to a person having the same name at the wrong address—No. 2 East Avenue, a long distance from No. 113 on the same avenue—than he had to deliver it to a person by the wrong name at the right address, there being no person of the same name there. We have held that where anything takes place in the course of the delivery to arouse suspicion or raise a doubt as to the correctness of it, or, in other words, when the address and the de-

livery proposed to be made do not correspond, the company should wire back for a better address. This brings the case within the principles settled by the numerous decisions of this Court. *Hendricks v. Tel. Co.*, 126 N. C., 304; *Lyne v. Tel. Co.*, 123 N. C., 129; *Hinson v. Tel. Co.*, 132 N. C., 460; *Woods v. Tel. Co.*, 148 N. C., 1; *Medlin v. Tel. Co.*, 169 N. C., 495.

In *Sherrill v. Tel. Co.*, 117 N. C., 352, it was held to be the duty of the operator to wire back for a better address in case of doubt, and it was no excuse that he supposed he had all the information obtainable. We have just said in *Medlin's case, supra:* "If the defendant was in doubt or unable to deliver the message, its plain duty, as often decided by the Court, was to wire back to Charlotte for a better address, and it would have been forthcoming, as the sender had left both his phone and street address, for the very purpose, with the operator there. S. C. McCall, who had delivered the message at Charlotte to the defendant for transmission, knew the sendee well, and, of course, her sister, Mrs. Jonas, could have given a fuller and more accurate address if one was required. It was clear negligence not to have sought this information by a service message to Charlotte. *Hendricks v. Tel. Co.*, 126 N. C., 311; 35 S. E., 543; 78 Am. St. Rep., 658; *Hoaglin v. Tel. Co.*, 161 N. C., 395; 77 S. E., 417; *Ellison v. Tel. Co.*, 163 N. C., 5; 79 S. E., 277, and cases cited at page 13."

Defendant was also liable for having notified the sendee that the message had been truly delivered when it had not been. *Laudie v. Tel. Co.*, 126 N. C., 431.

It occurs to me that this case is fully as strong for the plaintiff as several we have decided against this company in which the negligence was not so gross as it is shown to be here. Where the message is not delivered because of a deficient address, there may be some excuse for the defendant, but where it is guilty of a positive wrong in knowingly delivering it at the wrong place, there is much less, if any.

As to the contributory negligence, it was aptly said in *Cogdell v. Tel. Co.*, 135 N. C., at p. 438: "While the issue of contributory negligence was found in favor of the plaintiff, we feel compelled to say that in cases like the present we see no room for its application. The only negligence possibly imputable to the sendee is that of the sender in misspelling her name. This act of negligence was entirely antecedent to the negligence of the defendant, and in no sense concurrent therewith. Moreover, the defendant got the full benefit of that defense under the instructions as to the doctrine of *idem sonans*. If the dissimilarity in spelling were so great as to render it practically impossible for the defendant to identify the addressee after the exercise of due diligence, then there would be no negligence on the part of the defendant, and consequently neither occasion nor necessity for the defense of contributory negligence.

If, on the contrary, the defendant could by the exercise of reasonable diligence have identified the sendee and delivered the message, in spite of the previous negligence of the sender in misspelling the name, it could not set up such antecedent negligence in bar of recovery." So, here, the negligence attributable to plaintiff, if any, occurred before the message reached Greenville, S. C., and that which really caused the injury was the failure of the defendant, by itself or its messenger, to attach proper importance to the fact that its delivery was at the wrong street number, and either to wire back for a better address or make further inquiry for the true address. · There was evidence that he could have been found by inquiry at the postoffice. The addressee had lived in Greenville about two years, had registered his name at the postoffice and received his mail there. In *Woods' case, supra,* the address was 38 Depot Street, whereas the addressee lived in the rear of 83 Depot Street, a wide departure from the correct address, and this Court held that the failure to examine the city directory, where his name and street address could be found, or to inquire at the postoffice (*Lyne v. Tel. Co.*), where he received his mail, was evidence of negligence, and we stated the rule to be that, notwithstanding a misdirection of the message, it is the duty of the company to make reasonable inquiry and to exercise that degree of care which a prudent person would use, under the circumstances, in the effort to deliver it. The messenger knew he was at the wrong place, and yet did not wait to inquire of the negro man to whom he handed the message if he was the proper addressee. It is surprising that such a course was not taken, as the man could have given the information as soon as he had seen the contents of the message. This would seem, of itself, to be gross negligence, and the real, last, and efficient cause of the nondelivery to the proper addressee, especially when the messenger had been put on his guard by the fact that he was not at the right street number, but far away from it.

There was an error in the charge as to damages. I do not see why mental anguish should stop at the grave. It may continue long after the interment, and if it does, and the negligence is its proximate cause, there is no sound reason for denying a recovery of damages for it. A man's mind may suffer as well as his body, and we cannot fix a limit to the one any more than we can to the other, and not as well to the anguish of the mind as to that of the body. The doctor said to Macbeth (not quoting literally), that he could not minister to a mind diseased, nor pluck from the memory a rooted sorrow, nor raze out the written troubles of the brain, nor had he any sweet oblivious antidote to cleanse the stuffed bosom of that perilous stuff which weighed upon the heart, for therein the patient can only minister to himself. It was this confession of deficiency in medical·skill that caused Macbeth to reply: "Throw physics to the dogs. I'll none of it." We cannot measure the mental

damage as well as we can the physical, for the latter is seen and cannot
easily be simulated; but that it may and does exist, and is a reality, we
know, and for it the law awards compensation, and should do so, just
as much as it does for physical pain. It should be cautiously done,
because it is so easily feigned; but that is no reason why, when it is
found to exist, it should be limited any more than bodily suffering.

BROWN, J., dissenting: I see no error committed upon the trial of
the issue as to damages. If there was error in submitting the issue as
to contributory negligence, that issue should be set aside and judgment
directed for the plaintiff for the sum assessed under the issue as to
damages.

There are cases in our Reports against railroad companies where the
findings upon issues of negligence and contributory negligence have
been set aside and new trials awarded upon those issues when the finding
as to damages was left standing. Therefore, I see no reason why this
issue of contributory negligence should not be eliminated and judgment
rendered for the $50 damage assessed.